NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 26, 2017[*]

Decided May 26, 2017

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

CERTIFIED COPY
A True Copy
Teste:

Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

| | |
|---|---|
| No. 16-2091 | |
| DEION L. TURNER,<br>    *Plaintiff-Appellant*,<br><br>    *v.*<br><br>SALVADOR A. GODINEZ, et al.,<br>    *Defendants-Appellees*. | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division.<br><br>No. 15 C 4537<br><br>Sharon Johnson Coleman,<br>*Judge*. |

**O R D E R**

    Deion Turner claims in this suit under 42 U.S.C. § 1983 that he was held in prison after his mandatory release date, in violation of the Eighth Amendment. The district court dismissed the suit, giving as reasons several arguments the defendants had raised in motions to dismiss. Because we conclude that Turner states a claim against two defendants, we vacate the judgment in part and remand for further proceedings.

---

    [*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. *See* FED. R. APP. P. 34(a)(2)(C).

Case: 1:15-cv-04537 Document #: 79 Filed: 06/19/17 Page 2 of 6 PageID #:490
Case: 16-2091      Document: 00713016040      Filed: 06/19/2017      Pages: 6

No. 16-2091                                                                                          Page 2

Turner's claim centers on the 911 days' credit he should have received for the time he was detained before sentencing. Turner already had been convicted of a sex offense, and on February 23, 2010, he was arrested for not complying with the Illinois Sex Offender Registration Act, *see* 730 ILCS 150/6. He was detained for 212 days until released on bond on September 23, 2010. On October 7, 2011, he was arrested again and charged with an additional violation of the same statute. From then on he remained in pretrial detention on both charges until September 4, 2013, when he pleaded guilty to those crimes and was sentenced—an additional 699 days. As provided in the parties' plea agreement, the Illinois circuit court sentenced Turner to 2 years' imprisonment on the 2010 charge and 3 years' imprisonment on the 2011 charge, along with a mandatory term of supervised release. Because the prison terms were imposed consecutively, the 699 days that Turner had been in custody after his arrest in October 2011 could count only once toward the aggregate 5-year sentence. *See* 30 ILCS 5/5-8-4(g)(4); *People v. Latona*, 703 N.E.2d 901, 907 (Ill. 1998). The sentencing court's orders of commitment thus correctly reflect that Turner was entitled to 212 days' credit for time served in pretrial detention on the 2010 charge and 699 days' credit for time served on the 2011 charge.

In calculating a release date in March 2014, however, staff at the Illinois Department of Corrections applied only 699 days' credit, not 699 plus 212. Turner served the first few days of his sentence at Stateville Correctional Center, where the supervisor of the Institutional Record Office—the unit responsible for calculating release dates, *see Figgs v. Dawson*, 829 F.3d 895, 899 (7th Cir. 2016); TRIAL HANDBOOK FOR ILLINOIS LAWYERS - CRIMINAL SENTENCING § 34:6—initially calculated a release date giving him only 699 days' credit. Turner immediately filed a grievance stating that he was entitled to another 212 days' credit. And, Turner contended, because Illinois inmates are entitled to day-for-day good time, *see* 730 ILCS 130/3, his 5-year aggregate sentence really amounted to 2½ years, or 912 days, and had expired immediately after his September 2013 sentencing because of the 911 days served in pretrial detention.

Turner's complaint about the 212 days apparently went unanswered. He was transferred to Dixon Correctional Center, where he filed another grievance stating that he was being held too long. But Dixon employee Becky Williams, who supervised that facility's Institutional Record Office, informed Turner that without knowing the specific dates when he was detained before sentencing she was concerned that crediting him with another 212 days might impermissibly double count days he was detained on both charges. Turner replied by providing the dates of his two periods of pretrial detention. But Williams then insisted she could not correct Turner's release date without new orders of commitment, and the prison administrators reviewing Turner's grievances

Case: 1:15-cv-04537 Document #: 79 Filed: 06/19/17 Page 3 of 6 PageID #:490
Case: 16-2091     Document: 00713016040     Filed: 06/19/2017     Pages: 6

No. 16-2091                                                                 Page 3

deferred to Williams's assertion. The Department of Corrections finally released Turner on April 1, 2014, after he had served a total of 1,119 days, or just over 3 years, on the charges. He then began his mandatory term of supervised release.

After that Turner first sought relief in the Illinois courts, hoping to shorten his period of supervision commensurately. He sought to correct the orders of commitment, but the sentencing judge denied that requested relief. Turner appealed but in the meantime asked the sentencing judge to compel the Department of Corrections to give him all 911 days' credit. This time the court reacted favorably and in June 2014 ordered the Department to apply 911 days' credit to Turner's aggregate sentence. Then in December 2015 the appellate court affirmed the sentencing judge's refusal to revise the orders of commitment, noting that while the appeal was pending Turner had received the relief he wanted through the sentencing judge's June 2014 order. *People v. Turner*, No. 1-14-0769, slip op. at 2 (Ill. App. Ct. Dec. 18, 2015).

Meanwhile, Turner also had filed the first of his two federal lawsuits in late April 2014, claiming that his prolonged incarceration violated the Eighth Amendment. That action, like the one now before us, was brought under § 1983. Judge Leinenweber dismissed that suit in December 2014, asserting a lack of jurisdiction. The judge explained that he would not interfere with ongoing state proceedings. We summarily affirmed that decision. *See Turner v. Chandler*, No. 14-3794, slip op. at 2 (7th Cir. June 2, 2015).

The ongoing state proceedings included, in addition to Turner's appeal from the sentencing court's refusal to revise the orders of commitment, a second appeal from the denial of a petition for habeas corpus and mandamus that Turner had filed in August 2014. Turner wanted the sentencing court to terminate his supervised release, which, he contended, would have ended already if the Institutional Record Office at either prison had correctly applied his credits and timely released him. The sentencing judge had granted in October 2014 the state's motion to dismiss, which argued that the court was not authorized to shorten a mandatory term of supervised release. That decision was affirmed on appeal in February 2016. *People v. Turner*, No. 1-14-3467, slip op. (Ill. App. Ct. Feb. 18, 2016).

Turner did not wait for that decision, however, and in May 2015 he filed the federal suit underlying this appeal. Once again he alleged that the Department of Corrections had held him too long. (Turner's complaint includes additional claims, but he has abandoned them on appeal, so we say no more about them.) The many public officials and Department employees listed as defendants include the unnamed

No. 16-2091 Page 4

supervisor at Stateville who initially calculated Turner's release date as well as Becky Williams, the supervisor at Dixon who refused to apply the 212 days' credit unless Turner could bring her reassurance from the sentencing court.

In several motions to dismiss, the defendants variously argued that the district court was divested of jurisdiction by the *Rooker-Feldman* doctrine, *see D.C. Court of Appeals v. Feldman,* 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.,* 263 U.S. 413 (1923), that the Eighth Amendment claim is barred by the doctrine of issue preclusion, and that some of them are immune from suit. The district court accepted all of these contentions. Pointing to Turner's earlier federal suit, the court accepted the defendants' contentions that Judge Leinenweber had dismissed that suit under the *Rooker-Feldman* doctrine and that, consequently, Turner cannot relitigate the jurisdictional question. Moreover, the court asserted, even if Judge Leinenweber had not decided the issue against Turner, the *Rooker-Feldman* doctrine applies to this suit because "Turner is essentially seeking" an order overturning a "state court determination that his out date was calculated correctly." Besides, the district judge continued, Turner does not allege personal involvement by some defendants and others are immune from suit.

On appeal Turner emphasizes that no state court ever has ruled that his release date was calculated correctly. We agree, and we also conclude that Turner states an Eighth Amendment claim which is not barred by the *Rooker-Feldman* doctrine or the doctrine of issue preclusion.

To begin, the applicability of the *Rooker-Feldman* doctrine to Turner's claim has never been decided. In arguing the opposite, the defendants appear to rely on Judge Leinenweber's postjudgment order in the previous case denying Turner leave to proceed on appeal in forma pauperis. The order does say that the *Rooker-Feldman* doctrine bars Turner's claim, but that assessment is neither correct nor the reason given by Judge Leinenweber for dismissing Turner's 2014 federal suit. Instead, as the judge's statements from the bench make clear, he thought that Turner must wrap up the proceedings in state court before a federal court could acquire jurisdiction. That view is mistaken, but it has nothing to do with *Rooker-Feldman*.

The *Rooker-Feldman* doctrine is irrelevant. That doctrine prevents federal courts from reviewing "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005); *see also Jakupovic v. Curran,* 850 F.3d 898, 902 (7th Cir. 2017). Even if the proceedings in state court had been relevant to his federal lawsuit, Turner's case in the state appellate court was still pending

Case: 1:15-cv-04537 Document #: 79 Filed: 06/19/17 Page 5 of 6 PageID #:490
Case: 16-2091    Document: 00713016040    Filed: 06/19/2017    Pages: 6

No. 16-2091                                                                                          Page 5

when both federal actions commenced, meaning that, for purposes of the *Rooker-Feldman* doctrine, he was not a "state-court loser." See *Exxon Mobil Corp.*, 544 U.S. at 291–92; *Parker v. Lyons*, 757 F.3d 701, 705–06 (7th Cir. 2014).

More importantly, as Turner continuously has insisted, his injury did not stem from an Illinois judgment; no Illinois court ever has found that the Department of Corrections correctly calculated Turner's release date. Rather, Turner *succeeded* in obtaining an order requiring the Department of Corrections to honor all 911 days' credit to which he was entitled. As Turner explained to Judge Leinenweber, the state decisions underlying the defendants' *Rooker-Feldman* analysis decided only that the Department's mistake could not lead to shortening Turner's term of supervised release. The state judge did not reject Tuner's underlying premise that the Department had imprisoned him for too long. Turner does not argue that an Illinois judge got it wrong; rather, he claims that the sentencing court issued unambiguous orders of commitment that the defendants refused to honor. Such a claim does not implicate the *Rooker-Feldman* doctrine. See *Burke v. Johnston*, 452 F.3d 665, 668 (7th Cir. 2006) (concluding that *Rooker-Feldman* does not bar inmate's suit when inmate's claim does not challenge state-court sentencing order but instead asserts that prison authorities were deliberately indifferent in delaying application of credit for pretrial detention).

For completeness, we note the obvious point that the doctrine of issue preclusion also is irrelevant. The dismissal of Turner's first § 1983 case was not premised on the *Rooker-Feldman* doctrine, so the first dismissal did not decide that issue. See *Reed v. Columbia St. Mary's Hosp.*, 782 F.3d 331, 335–36 (7th Cir. 2015). In fact, the earlier case did not decide any issue on the merits. Judge Leinenweber thought that Turner's federal suit was premature and simply told him, "You've got a case in state court, which you must appeal before you can go to federal court." Dismissals of this sort do not preclude refiling. See *Hill v. Potter*, 352 F.3d 1142, 1146 (7th Cir. 2003); *Am. Nat. Bank & Trust Co. v. City of Chicago*, 826 F.2d 1547, 1552–53 (7th Cir. 1987). In addition, we note that the defendants misleadingly told the district court that Turner had filed "at least 13 additional and unsuccessful lawsuits seeking the same relief." But the lawsuits cited for this proposition mostly were filed years before Turner's 911 days of pretrial detention, and, as far as we can tell, none of them concerned whether he was held too long in violation of the Eighth Amendment.

It follows that Turner's current suit should not have been dismissed. His allegations that Department of Corrections staff intentionally held him for too long state a claim under the Eighth Amendment. See *Werner v. Wall*, 836 F.3d 751, 760–61 (7th Cir.

Case: 1:15-cv-04537 Document #: 79 Filed: 06/19/17 Page 6 of 6 PageID #:490
Case: 16-2091     Document: 00713016040     Filed: 06/19/2017     Pages: 6

No. 16-2091                                                                    Page 6

2016); *Figgs*, 829 F.3d at 902–03; *Burke,* 452 F.3d at 667; *Campbell v. Peters*, 256 F.3d 695, 700 (7th Cir. 2001). Of course, to prevail, Turner will have to produce evidence that the defendants responsible for calculating his release date—the supervisors of the Institutional Record Office at Stateville and Dixon—were deliberately indifferent and not merely negligent. But the unambiguous orders of commitment providing 911 days' credit and the grievances showing that Turner informed both institutions that a mistake had been made suggest that each defendant knew of the risk Turner was being held beyond his mandatory release date and ignored that risk. With Williams, at least, knowledge of that risk is clear: Turner gave Williams the dates of his separate detentions, and we have not found any authority supporting her contention that she could not apply all of the ordered credits without a new court order. This is enough to state a claim. *See Figgs*, 829 F.3d at 902–05 (reversing grant of summary judgment when record supervisor only minimally investigated inmate's charge that prison officials set an incorrect release date); *Burke*, 452 F.3d at 667 (permitting allegations that inmate was held longer than he should have been "due to the 'deliberate indifference and delay' of DOC officials in granting him" credit for time in pretrial detention).

We agree with the district court, though, that Turner's claim cannot proceed against the rest of the defendants. The grievance counselors and prison administrators permissibly relied on the expertise of the supervisors of the Institutional Record Offices. *See Figgs*, 829 F.3d at 903–04 (no deliberate indifference where prison administrative staff reasonably deferred to expertise of specialized staff); *Johnson v. Doughty*, 433 F.3d 1001, 1011 (7th Cir. 2006) (same); *Greeno v. Daley*, 414 F.3d 645, 656 (7th Cir. 2005) (same). The prosecutors Turner has named are immune from suit. *See Imbler v. Pachtman*, 424 U.S. 409, 431 (1976); *Thomas v. City of Peoria*, 580 F.3d 633, 638–39 (7th Cir. 2009). The public defenders were not acting under color of state law and thus cannot be sued under § 1983. *See Polk Cty. v. Dodson*, 454 U.S. 312, 318–25 (1981). And, finally, Turner does not plausibly allege that the remaining defendants had any personal involvement in holding him beyond the date on which he was entitled to be released. *See Matthews v. City of E. St. Louis,* 675 F.3d 703, 708 (7th Cir. 2012) (explaining that § 1983 requires personal responsibility); *Knight v. Wiseman*, 590 F.3d 458, 462–63 (7th Cir. 2009) (same).

Accordingly, we VACATE the judgment as to Becky Williams and the supervisor of the Stateville Institutional Record Office and REMAND for further proceedings. We AFFIRM the judgment in all other respects.